LAIRD v. LAIRD'S ESTATE.

1. INCONSISTENT REMEDIES—ELECTION—ESTOPPEL.
   The dismissal of a bill for specific performance of a contract
   by a decedent to give all of his property to complainant in
   consideration of board and care, on the ground that com-
   plainant had filed a claim for the board against decedent's
   estate, is not a.bar to the maintenance of the claim.

2. WILLS—PETITION FOR PROBATE—ESTOPPEL.
   The presentation of a will for probate will not estop proponent
   to assert a claim against decedent's estate.

3. ESTATES OF DECEDENTS—CONTRACTS—EVIDENCE.
   Evidence of an admission by a decedent that he was to pay his
   son a stated amount per week for board, but did not pay, as
   he was saving his property for the son, is sufficient to sup-
   port a judgment in favor of the son for the board furnished.

4. SAME—MEASURE OF RECOVERY.
   Where a father agreed to pay his son a stated amount per week
   for board, the fact that the father afterwards changed his
   mind, and decided to leave certain property to the son, does
   not authorize the latter to recover from the father's estate
   the reasonable value of the board, but the recovery is limited
   to the agreed price.

5. SAME—EVIDENCE.
   Evidence of declarations of a deceased father as to unpleasant
   relations with his other children is not admissible in support
   of a claim by one child against the father's estate for the
   board of the father.

6. SAME—MISCONDUCT OF COUNSEL.
   In a proceeding to enforce a claim against decedent's estate, a
   statement by claimant's counsel that the defense kept the
   mouth of claimant closed, and, in response to a suggestion
   that it was the law which had that effect, that they could
   waive the law excluding his testimony, is reversible error.

Error to Wayne; Lillibridge, J.   Submitted February
14, 1901.   Decided June 4, 1901.

Charles Laird presented a claim against the estate of
James Laird, deceased, for board and attendance.   The

claim was allowed by the commissioners, and William C. Laird and Betsy Lockhart, heirs at law and legatees of decedent, appealed to the circuit court. From a judgment for claimant, contestants bring error. Reversed.

*Warner & Codd,* for appellants.

*James H. Pound,* for appellee.

MONTGOMERY, C. J. This is an appeal from a judgment of the circuit court in favor of the claimant, Charles Laird. The claim was first presented to the commissioners on claims, and was for board of the deceased for a long period of time. The case of *Laird* v. *Laird,* 115 Mich. 352 (73 N. W. 382), involved, to some extent, the same questions which are presented in this record. It is contended by appellants that the case of *Laird* v. *Laird* is decisive of the present case, and a bar to the claimant's action. It appeared in that case, among other things, that the claimant here had filed the present claim before commissioners on claims, and that an appeal had been taken to the circuit court; that, pending this appeal, the bill of complaint in the chancery case was filed, claiming specific performance of a contract by which the deceased agreed to give claimant the premises in question, and whatever property he died seised of, in consideration of his board. This bill was dismissed, in part upon the ground that the filing of the claim for allowance before commissioners, and the retention of that case in court, was inconsistent with the claim set up in the bill. The appellants, however, contend that that case should be treated as a bar to this. We think this results from a misapprehension of the holding in that case. To dismiss that case on the ground that the filing of the present claim was inconsistent with the claim there made, and then to refuse relief in this case because of the filing of that bill, would be to deny a hearing upon the merits in either proceeding. We think that decision should not be so construed.

It is further contended that the filing of the will for probate was in that case held to be inconsistent with the claimant's present claim, and, that for this reason he is estopped from asserting the claim for board. The expression contained in the opinion in *Laird* v. *Laird*, that the filing of the will was inconsistent with the claim set up in the bill, was used in discussing a question of fact, and drawing deductions from the acts of the complainant. It was not intended to hold, as matter of law, that, if claimant had a valid claim against the estate, the filing of this will for probate would discharge that obligation, nor do we think such is the legal effect.

It is further strenuously insisted that there is no testimony tending to sustain claimant's claim. It would not profit counsel to cite further at length the testimony, but there is testimony in the record showing admissions of deceased to the effect that he was boarding by the week, and was to pay four dollars a week, but did not pay it, for the reason that he expected to save the property for claimant. The force of this testimony was for the jury.

The circuit judge, in his charge to the jury, used the following expression:

"If claimant has satisfied you that James Laird agreed to pay four dollars a week for his board, then James Laird's estate is liable, and this action is properly brought, even though the father afterwards changed his mind, and, instead of paying four dollars a week, thought that he would convey the Bagg-street property to him after his death. Under these circumstances, I say Charles Laird's claim is properly brought in this court for what his services are fairly worth. Upon that point, if the claimant is entitled to recover anything in this case,—that is to say, if you find the presumption is rebutted, and if you find there was an agreement to pay for his board,—then the recovery of Charles Laird is not necessarily limited to four dollars a week, but he may recover whatever you may believe from the testimony the care that he rendered his father and his board were worth for the period of six years before the father's death; that is to say, for a period of six years before January 7, 1893. He is entitled to recover what these services were worth for a period of six

years before his father's death, less the rental value of the house on Bagg street, over and above the repairs and improvements which Charles put on that house."

We think this instruction liable to mislead the jury. If, as a matter of fact, the contract was to pay at four dollars a week, this should be the limit of recovery, and not the reasonable value of the services. The fact that deceased may have changed his mind, and thought to compensate claimant by conveying the Bagg-street property, does not change the contract, and, if the contract was at four dollars a week, all that deceased was chargeable with was failure to pay at the agreed price.

A Mrs. Patterson testified to statements made by deceased that while in Scotland his son William wanted him to work and peddle on the street, and that he had never done that kind of work, and would not go back to Scotland and peddle, and that he said they did not use him well, and that he was glad to get back, and, in answer to a direct question, also stated that deceased felt a little soreness towards his children in Scotland. We cannot conceive for what purpose this testimony was admissible. Its most probable effect was to prejudice the jury, and create an impression in their minds that the children of deceased in Scotland did not merit consideration at the hands of the jury. It is said in the brief of appellee's counsel that this testimony was not objected to. It is true that no objection appears to have been made at the place where it was offered, but that the subject was under consideration is apparent from the ruling of the court made later in the case, and to which ruling an exception was taken by appellants' counsel.

While Mrs. Nichols was on the stand, a question was put to her, and objected to by appellants' counsel, when the following occurred:

"*Mr. Pound:* This man's mouth is shut, and my brother keeps it shut.

"*Mr. Warner:* I take an exception to that statement. I have not kept it shut. The law keeps it shut.

"*Mr. Pound:* My friend can waive the law.
"*Mr. Warner:* I take an exception to that statement.
"*The Court:* Note an exception."

The question presented is very similar to that ruled upon in *Thompson* v. *Railway Co.*, 91 Mich. 255 (51 N. W. 995). The counsel for claimant must have known that the testimony of claimant was inadmissible, and that no presumption could be raised against the other side for a failure to waive an objection to his testimony. The purpose of these expressions could have been no other than to ask the jury to draw an unfavorable inference because the defendants were standing upon their legal rights.

It is earnestly contended by appellee's counsel that justice was done in the case, and that the judgment should be affirmed. We cannot, however, overlook the errors committed on the trial. These errors, in the most part, were due to an attempt to inject into the case something which did not belong there, and which counsel for the claimant must have understood was foreign to the issue. In such a case, the responsibility for a reversal of the judgment certainly does not rest with this court. It is very easy to avoid such errors, and it appears that an injustice may have been done because of them. It is the right of an appellant to be given an opportunity to try his case according to the rules of law.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.